NO. 12-15402-DD

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/appellee,*

v.

JESUS M. DORADO,
*Defendant/appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

BRIEF OF THE APPELLANT
JESUS M. DORADO

JACQUELINE E. SHAPIRO, ESQ.
Law Offices of Jacqueline E. Shapiro
Counsel for Jesus M. Dorado
40 N.W. 3rd Street, PH 1
Miami, Florida 33128-1838
Tel. (305) 403-8207
Fax: (305) 403-8209

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

United States v. Jesus Manuel Dorado
Case No. 12-15402-DD

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Alers, Alberto, Codefendant

Berube, Robert N., Assistant Federal Public Defender

Caceres, Ana Z., Codefendant

Caruso, Michael, Federal Public Defender

Cole, Timothy M., Assistant United States Attorney

Dorado, Jesus M., Defendant/Appellant

Entin, Alvin E., Trial Counsel

Ferrer, Wifredo A., United States Attorney

Ginsberg, Ivy R., Counsel for Codefendant

Gonsoulin, John, Assistant United States Attorney

Guerra Johansson, Omar F., Counsel for Codefendant

Horowitz, Philip R., Counsel for Codefendant

Jacobs, Richard C., Assistant Untied States Attorney

Kreiss, Jason W., Counsel for Codefendant

Lowenthal, Sheryl J., Counsel for Codefendant

Reyes, Yvette R., Codefendant

Rosenbaum, Hon. Robin S., United States District Judge

Salyer, Kathleen M., Assistant United States Attorney

Scola, Hon. Richard N., United States District Judge

Seltzer, Hon. Barry S., United States Magistrate Judge

Shapiro, Jacqueline E., Appellate Counsel

Smith, Michael G., Counsel for Codefendant

Snow, Hon. Lurana S., United States Magistrate Judge

White, Hon. Patrick A., United States Magistrate Judge

Williams, Hon. Kathleen M., United States District Judge

Williams, Russell J., Counsel for Codefendant

Zloch, Hon. William J., United States District Judge

## STATEMENT REGARDING ORAL ARGUMENT

The defendant respectfully submits that oral argument is necessary to the just resolution of this appeal and will significantly enhance the decision making process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . C-1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      Course of Proceedings, Disposition in the

      District Court and Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . 3

      Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      Standards of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . . . . . . 18

    I.     The district court erred procedurally at sentencing in failing to ensure that the defendant had reviewed the revised presentence report prior to sentencing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    II.    The district court erred in failing to afford a minor role adjustment to the defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    III.   The defendant's sentence was unreasonable in light of the overrepresentation of the defendant's criminal history. . . . . . . . . . . 25

IV.    The appellate waiver provision in the defendant's plea agreement

was ineffective. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## TABLE OF CITATIONS

**CASES:**

*United States v. Bibergall*, No. 06-10308,

  2006 WL 3369759 (11th Cir. Nov. 20, 2006). . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005). . . . . . . . . . . . . . . 29

*United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993). . . . . . . . . . . . . . . . . . 31

*United States v. Delgado*, 56 F.3d 1357 (11th Cir. 1995). . . . . . . . . . . . . . . . . . 15

*United States v. Dorvil*, 784 F. Supp. 849 (S.D. Fla. 1991). . . . . . . . . . . . . . . . . 22

*United States v. Ellisor*, 522 F.3d 1255 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . 15

*United States v. Evans*, 478 F.3d 1332 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . 15

*United States v. Foster*, 575 F.3d 861 (8th Cir. 2009). . . . . . . . . . . . . . . . . . . . . 20

*United States v. Govan*, 293 F.3d 1248 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . 14

*United States v. Hayes*, 171 F.3d 389 (6th Cir. 1999). . . . . . . . . . . . . . . . . . . . . 20

*United States v. Howe*, 543 F.3d 128 (3d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Lovelace*, 565 F.3d 1080 (8th Cir. 2009). . . . . . . . . . . . . . . . . . 20

*United States v. Rodriguez de Varon*, 175 F.3d 930 (11th Cir. 1999). . . . 14, 22, 24

*United States v. Trujillo*, 146 F.3d 838 (11th Cir.1998). . . . . . . . . . . . . . . . . . . . 14

*United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007). . . . . . . . . . . . . . . . . 28

## STATUTORY AND OTHER AUTHORITY:

8 U.S.C. § 1324(a)(1)(A)(iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. § 1324(a)(1)(A)(v)(I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. § 1324(B)(I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 371. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 912. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1001(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1849. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28, 29

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Crim. P. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Crim. P. 32(i)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed.R.Crim.P. 32(i)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

U.S.S.G. § 3B1.3, comment. (n. 5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S.S.G. § 5K1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10, 30

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which give the courts of appeals jurisdiction over all final decisions of the district courts of the United States. The appeal was timely filed on January 20, 2013, from the amended final judgment and commitment order entered on January 9, 2013, that disposes of all claims between the parties to this cause.

## STATEMENT OF THE ISSUES

I.     Whether the district court erred procedurally at sentencing in failing to ensure that the defendant had reviewed the revised presentence investigation report prior to sentencing?

II.     Whether the district court erred in failing to afford a minor role adjustment to the defendant?

III.     Whether the defendant's sentence was unreasonable in light of the overrepresentation of the defendant's criminal history?

IV.     Whether the appellate waiver provision in the defendant's plea agreement was ineffective?

## STATEMENT OF THE CASE

The appellant was the defendant in the district court and will be referred to by name or as the defendant. The appellee, United States of America, will be referred to as the government. The record will be noted by reference to the volume number, document number, and page number of the Record on Appeal as prescribed by the rules of this Court.

The defendant is incarcerated.

### Course of Proceedings, Disposition in the
### District Court and Statement of Facts

On June 28, 2011, Defendant/Appellant Jesus Manuel Dorado was charged with codefendants Alberto Alers, Ana Zoila Caceres and Yvette Rossy Reyes in a multi-count sealed indictment. DE:3. The indictment was subsequently unsealed. DE:4. Count one charged the defendants with conspiracy to encourage and induce aliens to reside in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (B)(I). Counts 2-13 alleged the substantive offense of encouraging and inducing an alien (specified by initials and dates) to reside in the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and 18 U.S.C. § 2, of which Dorado was charged as follows: Count 8 charged Dorado and Alers with encouraging and inducing "R.O.", on approximately March 18, 2008, to reside in the United States; count 9 charged all

3

of the defendants with encouraging and inducing "A.S.," on approximately March 19, 2008, to reside in the United States; count 10 charged all of the defendants with encouraging and inducing "Em. C.", on approximately March 19, 2008, to reside in the United States; count 12 charged Dorado with encouraging and inducing "A.A.", on approximately July 14, 2008, to reside in the United States; and count 13 charged Dorado with encouraging and inducing "Ev. C.", on approximately July 14, 2008, to reside in the United States.  In addition, all of the defendants were charged with: conspiracy to make a false statement to a federal agency, in violation of 18 U.S.C. § 371 (count 14); making a false statement to a federal agency, in violation of 18 U.S.C. § 1001(a)(3) (counts 15-23); conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1849 (count 28), and mail fraud, in violation of 18 U.S.C. § 1341 (counts 25-42).  Alers was also charged individually with impersonating a federal officer, in violation of 18 U.S.C. § 912 (counts 24-27).  DE:3.

On April 26, 2012, Dorado entered into a written plea agreement with the government.  DE:124.  The agreement provided for his entry into a plea of guilty to two of the counts – conspiracy to encourage and induce aliens to reside in the United States (count one); and conspiracy to commit mail fraud (count 28) – in exchange for the government's agreement to seek dismissal of the remaining counts against him following sentencing.  DE:124:1.  The agreement also provided for a waiver of the

4

right to appeal "any sentence imposed, or the manner in which the sentence was imposed, including any restitution order, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing." DE:124:6.

Dorado also signed a factual proffer indicating that he was a paid employee of Seamens Harvest Ministrations Organization, Inc. (SHM), in which capacity he assisted in preparing false documentation submitted to the United States Citizenship and Immigration Services (USCIS) on behalf of aliens, who paid SHM for its services. DE:124:10-11. The proffer indicated that Dorado was absent from SHM for certain periods of time. DE:124:12.

At the outset of the plea colloquy, held April 26, 2012, counsel for Dorado announced, contrary to the written plea agreement, that Dorado wished to plead guilty to "counts 1 and 8." DE:229:3. Thereafter, Dorado indicated that he had been treated from 2006 through approximately 2008 for anxiety and substance abuse, including alcoholism, which was the cause of a prior DUI charge. DE:229:4. The court later inquired concerning, and obtained Dorado's acquiescence to, a plea of guilty to counts 1 and 28, as indicated in the written plea agreement. DE:229:8, 12-13. The court did not explain, or elicit from the government, the nature or elements of the

5

charges to which Dorado pled guilty, instead limiting its reference to those charges as conspiracy to encourage and induce aliens to reside in the United States, and conspiracy to commit mail fraud.  DE:229:8.  Further, the court's questioning of Dorado about the facts of the offenses to which he was pleading guilty was not fully clear.  DE:229:12 ("Q. Did you and your co-defendants operating The Seamens Harvest Ministries Organization, Inc. that you could try to get them religious asylum or religious status in the United States?").

In advising Dorado about the waiver of his right to appeal, the court explained that Dorado retained his right to appeal any part of his sentence if, among other things, the court varied or departed and sentenced him above the sentencing guideline range, as reflected in the following interchange:

> Q.  You also understand generally a defendant in a criminal case has the right to appeal many different aspects of his or her sentencing. But in your plea agreement you have specifically agreed to waive or give up certain rights to appeal your sentence. If I sentence you to a sentence that exceeds the statutory maximum or if I vary or depart and sentence you above the sentencing guideline range, or if the government appeals any part of your sentence, then you could also appeal any part of your sentence. If one of those three things doesn't happen you can't appeal your sentence, do you understand that?
>
> A: Yes.

DE:229:10.

6

After the court adjudicated Dorado guilty of counts 1 and 28, the court granted

Dorado's request to be returned as soon as possible to the Federal Detention Center

for the purpose of his providing cooperation to the government.  DE:229:13.

At the court's direction, a presentence investigation report (PSI) was prepared.

DE:229:13.  The PSI recommended an applicable sentencing guidelines range of 70-

87 months, based on a total offense level of 26 and a criminal history category of II.

Dorado filed written PSI objections which sought a minor role adjustment and further

noted the government's anticipated filing of a motion for a reduced sentence under

U.S.S.G. § 5K1.1, in light of Dorado's provision of cooperation to the government.

DE:164.

The PSI was subsequently revised and transmitted to defense counsel on

September 21, 2012.  DE:233:3.  However, at the sentencing hearing, held October

5, 2012, defense counsel advised the court that he had not read the full revised PSI

until that very morning.  DE:233:3.  The revised PSI increased Dorado's criminal

history category to III, resulting in a higher guidelines range of 78-97 months, and

defense counsel indicated he did not know of the change until right before the

sentencing.  DE:233:4.  In response to the court's query as to whether both sides had

reviewed the PSI, defense counsel indicated he had not fully done so:

THE COURT: All right. Has each side received and reviewed the presentence investigation report?

MR. COLE: Yes, Your Honor.

MR. ENTIN: Yes, Your Honor, *with the following exception*: There was a revised PSI that came in on September 21st. I checked the addendum section and read what I believe were the arguments, the changes on the addendum section, and didn't look at the body, Your Honor, of the report until actually this morning when I spoke to my client. *Apparently, Mr. Eisinger changed the criminal history from the initial presentence report where it was a Category II to a Category III at this stage*. ...

DE:233:3-4 (emphasis added).

Defense counsel asked leave to argue *ore tenus* that the increase constituted an overrepresentation of Dorado's criminal history. DE:233:4. The court asked Dorado if he had "read and reviewed" the PSI; Dorado indicated he had. DE:233:5. However, the court did not ask the defendant whether Dorado had gone over the revised PSI, including with his attorney, and defense counsel did not indicate he had done so.

The court rejected Dorado's request for a minor role reduction, while acknowledging that codefendant Alers was "more involved." DE:233:8. The court also ruled that the calculation of Dorado's criminal history as category III was appropriate, and denied his request for a downward variance based on an overrepresentation of his criminal history. DE:233:17.

8

The government moved for a downward departure from the advisory sentencing guideline range based on Dorado's substantial cooperation, under U.S.S.G. § 5K1.1.  DE:172; DE:233:9.  The government stated that Dorado's cooperation was provided quickly and extended to three debriefings.  DE:233:10. The government stated further:

> The debriefings were significant.  He provided not only a confession to his own involvement but he provided information regarding his own mother.  That's defendant Ana Caceres.  He explained how Ms. Caceres gambled the money in the casinos as a way to handle all the money that was being taken in by the conspiracy.  He told us about cashier's checks that she had in amounts greater than $150,000.  Based on his debriefings, ultimately both defendants Dorado and Reyes agreed to change their plea.

DE:233:10. The government recommended imposition of a 65-month sentence, based on a requested 25% reduction from 87 months, a point within Dorado's advisory guidelines range of 78-97 months.  DE:233:11.  The defense stated that the government underestimated Dorado's cooperation and asked that the court begin its calculation both of credit for Dorado's cooperation and consideration of the pertinent statutory sentencing factors under 18 U.S.C. § 3553(a), including the overrepresentation of Dorado's criminal history, at 70 months, with a resulting reasonable sentence of between 24 and 36 months.  DE:233:12-15.

9

The court denied Dorado's request for a variance based on overrepresentation of criminal history. DE:233:4, 17. The court also granted the government's motion for a downward departure under U.S.S.G. § 5K1.1, while concluding that Dorado was entitled to more than 25% credit for his cooperation, particularly in light of his furnishing information as to his mother. *Id.* However, the court stated that it did not believe that this credit should be applied to 97 months, the high end of the advisory guidelines range, but instead to a much higher amount. DE:233:17. The court went on to explain that its sentencing calculation was in fact premised on more than 120 months, as follows:

> I think that but for your cooperation, I would have no problem sentencing you to *way in excess of ten years* in prison; however, I'm giving you credit for your cooperation.

DE:233:18 (emphasis added). The court then proceeded to impose a total sentence of 60 months' incarceration. DE:233:20. In imposing sentence, the court erroneously indicated that the sentence pertained to "counts 1 and 2," rather than to counts 1 and 28. *Id.* Subsequently, the court ordered a total special assessment of $200.00 as to counts 1 and 28, three years of supervised release, and a restitution amount to be determined at a later hearing. *Id.* At the defendant's request, the court agreed to recommend that Dorado be incarcerated in a facility in South Florida so as to facilitate his wife's ability to operate Onyx Global Acquisitions, an ongoing business

10

owned by Dorado and managed by his wife.  DE:233:20-21; PSI at ¶ 78.  The court,

after imposing sentence, advised Dorado that he had the right to appeal.  DE:233:21

("Mr. Dorado, you have the right to appeal the sentence that was imposed.").

Prior to the imposition of sentence, the defendant expressed his deep shame

and remorse for his actions and apologized to everyone who might have been

negatively affected by his actions and to the Court, stating that he knew what he had

done was wrong; he also apologized to his wife and daughter for not being able to "be

there for them" over the prior 15 months.  DE:233:16-17.

At a restitution hearing held on January 4, 2013, the court ordered restitution

as to each of the defendants in the amount $1,136,958, for which they are jointly and

severally liable.  DE:256:14.  The court entered an amended judgment reflecting the

imposition of restitution, and an amended notice of appeal was thereafter filed.

DE:248, 258.

## Statement of Facts

The following facts derive from the PSI and factual proffer filed with the

district court:

Dorado was a paid employee of Seamens Harvest Ministries Organization, Inc.

(SHM), a company that purported to provide immigration consulting and services,

and assisted aliens who were living unlawfully in the United States to obtain lawful

11

immigrant status. DE:124:9. Dorado worked at SHM facilities in Plantation, Florida. DE:124:10.

SHM had been incorporated by Caceres (Dorado's mother) and Alers (Dorado's stepfather) on February 27, 2003. PSI at ¶ 11. The unlawful activities attributed to SHM occurred between February 16, 2006 through June 29, 2011, although Dorado was absent from, and had no involvement in, SHM between July and December of 2007, and was not involved with SHM after June 2009, when he opened his own lawful immigration consulting offices in Weston, Florida. PSI at ¶¶ 22, 79-80. Reyes had no involvement in SHM during 2009. PSI at ¶ 25.

Alers, who also used other aliases, was the registered agent and a director of SHM; Caceres was also a director, along with Dorado; and Reyes (Dorado's girlfriend) was an employee of SHM. PSI at ¶ 11. Alers and Caceres organized the fraudulent scheme to obtain money from illegal aliens for services that the aliens were advised would result in their obtaining lawful immigration status in the United States. PSI at ¶ 23. Alers and Caceres recruited Dorado, Reyes and other employees to assist in SHM's activities. PSI at ¶ 13. Alers and Caceres supervised and managed Dorado, Reyes and other SHM employees who submitted false documents to the government on behalf of the aliens. PSI at ¶ 23.

12

SHM advised aliens that it could obtain immigration benefits for them in exchange for donations.  DE:124:1; PSI at ¶ 12.  Alers, and Dorado, at Alers' direction, handled consultations with SHM's alien clients.  PSI at ¶ 24.  Reyes, at Caceres' direction, filled out applications, assisted Caceres in training employees to fill out documents, and also signed applications on behalf of Caceres.  PSI at ¶ 25.  Additionally, Alers misrepresented himself as a federal deportation and removal officer in order to obtain documents and/or payment from the aliens.  PSI at ¶ 23.

Dorado met with aliens to explain how they could obtain lawful immigration status as religious workers, and, after an alien's submission of a fee to SHM, which was given to Alers and Caceres, prepared an immigration form (DHS Form I-360) and supporting documents for the alien, inaccurately stating that the alien was entitled to lawful immigration status as a religious worker.  DE:124:10; PSI at ¶ 24.  The forms were then mailed to USCIS.  DE:124:10.

Dorado was aware the applications contained bogus information and that the aliens were not entitled to, and would not obtain, lawful immigrant status in the United States.  DE:124:10.  Nevertheless, Dorado, following the instructions of his stepfather, Alers, advised the aliens that they would attain legal status on receiving an initial USCIS receipt, which they were instructed to use in obtaining a Florida driver's license.  DE:124:11.

13

None of the 1,400 applications submitted by SHM were approved by USCIS. DE:124:12.  Dorado did not inform the aliens of these denials, but advised them to continue working with SHM to obtain lawful immigration status.  DE:124:11.  After clients began to question SHM concerning their failure to obtain lawful status, SHM, including an employee trained by Dorado, prepared additional types of applications for immigration benefits, such as applications for asylum and suspensions of deportation.  DE:124:12.

Dorado, Canceres, Reyes and Alers were arrested on July 13, 2011.  PSI at ¶ 22.  Because Dorado was not involved in SHM for approximately six months in 2007 and left SHM altogether after June of 2009, the loss amount attributable to him was less ($2,375,944.74) than the loss amount attributed to Reyes ($3,942.307.82) and to Alers and Caceres, respectively ($4,078,092.52).  PSI at ¶¶ 24, 25, 34.

### Standards of Review

A district court's determination of a defendant's role in the offense is a factual finding which is reversible if clearly erroneous.  *United States v. Rodriguez de Varon*, 175 F.3d 930, 936 (11th Cir. 1999) (*en banc*).  However, a sentencing court's conclusions of law will be reversed if erroneous.  *United States v. Govan*, 293 F.3d 1248, 1249 (11th Cir. 2002) (citing *United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir.1998)).  Moreover, the district court's interpretation of the sentencing guidelines

14

and application of them to the facts of the case are reviewed *de novo*. *United States v. Delgado*, 56 F.3d 1357 (11th Cir. 1995).

The procedural and substantive reasonableness of a sentence is reversible for abuse of discretion. *United States v. Ellisor*, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008).

Objections not raised in the district court are reversible for plain error. *United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007).

## SUMMARY OF THE ARGUMENT

The defendant's sentence was infirm in light of the district court's procedural error in failing to verify that the defendant read and reviewed with counsel the revised presentence investigation report prior to sentencing.  In light of defense counsel's remarks at the outset of sentencing indicating he had not read revisions to the PSI until right before sentencing, which included a one-level increase of Dorado's criminal history category, the court's failure to confirm whether the defendant had reviewed the revised report and was aware of the change did not ensure compliance with requisite sentencing procedure.

In addition, the denial of a minor role adjustment was improper in light of Dorado's significantly lesser involvement in the conspiracy offenses than codefendants Caceres and Alers, his mother and stepfather, which included: Dorado's recruitment for the unlawful immigration scheme by his parents, at a time when he was suffering from substance abuse and related psychological problems; his status as a salaried employee who lacked an equity interest in the illicit company and gave all payments of the victim-clients to Caceres and Alers; and the temporal limitation of his involvement in the conspiracy, given that he was not employed at the company for six months during 2007 and ended his involvement with it in 2009, two years before the conspiracy's termination upon the defendants' indictment and arrest.

16

Further, the sentence was unreasonable where premised on an overrepresentation of Dorado's criminal history that stressed his present offenses and past background while failing to adequately consider his marked development since extricating himself in 2009 from his past criminal conduct. The court failed to take into consideration the relatively minimal nature of Dorado's prior convictions, which occurred when he was in his early 20's, involved primarily marijuana possession and related driving offenses, and also stemmed largely from his substance abuse and related psychological problems, for which he ultimately received counseling and other treatment. Moreover, the sentencing court's focus on Dorado's past misdeeds failed to accord adequate consideration to his transformation, since leaving the illicit company in June of 2009, into a productive, gainfully employed member of the community running a legitimate business and laudably assuming family responsibilities as a husband and father, upon his marriage in September of 2009.

Finally, the appellate waiver in Dorado's plea agreement, providing for an exception where the sentence is the result of an upward departure or variance from the advisory guidelines range, is ineffective, given the district court's announcement at sentencing that its calculation of Dorado's sentence was based on an imprisonment term in excess of ten years – reflecting an upward departure from the applicable guidelines range of 78-97 months.

17

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.

**The district court erred procedurally at sentencing in failing to ensure that the defendant had reviewed the revised presentence report prior to sentencing.**

The defendant's sentencing was impaired by procedural error, where the district court failed to ensure that the defendant had reviewed the revised presentence report. Pursuant to Fed. R. Crim. P. 32(i)(1)(A), the court, at sentencing, "must verify that the defendant and the defendant's attorney have read and discussed the presentence report *and any addendum to the report*." *Id.* (emphasis added).

At Dorado's sentencing hearing, defense counsel advised the court that although he had received the revised PSI earlier, he had not read it fully and was unaware of changes in it – specifically, a one-level increase in Dorado's criminal history category from II to III – until the morning of sentencing. The court did not thereafter elicit whether defense counsel had an opportunity to discuss the revised PSI, including the changed criminal history category, with Dorado, nor did the court confirm whether Dorado had done so. In subsequently eliciting from Dorado that he had "received and reviewed" the PSI, the court did not verify whether this was the

18

*revised* PSI, nor whether Dorado had been able to review the revised PSI with his attorney.

This verification was of singular importance in the present case, where defense counsel had just advised the court that he himself did not know of the new PSI provision until shortly before the sentencing hearing, thus adding to the concern regarding Dorado's awareness of, and ability to fully assist his counsel in addressing, all factual and other bases on which his sentence was premised, including the increase of his criminal history category as set forth in the revised PSI.  In these circumstances, the court should properly have confirmed – from Dorado himself and/or through querying defense counsel – that Dorado had reviewed the *revised* PSI and had discussed it with his attorney.

Particularly in light of the change to the PSI that defense counsel himself acknowledged he was not previously aware of, the district court's failure to verify that Dorado had personally reviewed the revised report and discussed it with defense counsel was a significant and prejudicial error.  The district court's failure to fulfill this verification requirement was plainly erroneous, impacting on Dorado's substantial rights, and resulted in a procedurally unreasonable sentencing hearing. *See United States v. Bibergall*, No. 06-10308, 2006 WL 3369759 (11th Cir. Nov. 20, 2006) ("At sentencing, the court 'must verify that the defendant and the defendant's

19

attorney have read and discussed the presentence report.' Fed.R.Crim.P. 32(i)(1)(A).''). *See also United States v. Foster*, 575 F.3d 861, 863-64 (8th Cir. 2009) (failure to comply with the disclosure requirements of Rule 32 as to presentence report compels reversal; "[T]he procedure used in this case violates the generally accepted principle that a criminal defendant should have access to the material on which the court will base its sentencing decision and an opportunity to respond to information that is prejudicial to the defendant's cause.")(citing *United States v. Lovelace*, 565 F.3d 1080, 1091-93 (8th Cir. 2009); *United States v. Hayes*, 171 F.3d 389, 392 (6th Cir. 1999)).

## II.

### The district court erred in failing to afford a minor role adjustment to the defendant.

The district court's denial of Dorado's request for a minor role sentencing reduction was improper, where the record reflects that Dorado had a limited role as a salaried employee at SHM who was recruited by his mother and stepfather to engage in bogus immigration consulting services that were planned and directed by these parental figures.  Further, Dorado's involvement with SHM was far more limited temporally than his codefendants:  He did not work at SHM at all between July and December 2007, when he was incarcerated for a state offense, and again left

SHM's employ, this time for good, in June of 2009 – two years before SHM was closed. After that time, Dorado – unlike Caceres and Alers, who continued to work at SHM and direct its activities and employees until their arrest on June 29, 2011, and unlike Reyes, who was absent from SHM only during 2009 – engaged in legitimate work, including the provision of lawful immigration services at two companies. PSI at ¶¶ 22, 79, 80. In January of 2011, Dorado and his wife, whom he married in September of 2009, opened a lawful aircraft acquisition consulting firm, which his wife continued to operate following Dorado's arrest. PSI at ¶ 78.

> In denying the minor role adjustment, the district court stated:
>
> I believe that he was sufficiently actively involved and his participation was not consistent with somebody who has a minor role. The fact that Mr. Alers is more involved is reflective of the fact that he is going to get a two-level increase for his role.

DE:233:8.

The court's ruling reflects a perspective at odds with the appropriate standard applicable to minor role analysis. A defendant's mere active involvement in wrongdoing is not a sufficient basis for precluding the award of a minor role adjustment, nor is the fact that another defendant may receive an aggravated role enhancement sufficient in itself to deny a minor role adjustment to a defendant, like Dorado, whose involvement is considerably lesser. *See* U.S.S.G. § 3B1.3, comment.

(n. 5) (providing that a minor role adjustment "applies to a defendant ... who is less culpable than most other participants, but whose role could not be described as minimal"); *United States v. Rodriguez de Varon*, 175 F.3d 930, 944 (11th Cir. 1999) (*en banc*) (minor role adjustment warranted if the "defendant was less culpable than most other participants" in his relevant conduct) (emphasis in original). *See also United States v. Dorvil*, 784 F. Supp. 849, 851-52 (S.D. Fla. 1991) (defendants who off-loaded cocaine from a boat were entitled to a four-level minimal participant reduction because they were less culpable than those "who concocted the importation attempt and organized its essential details," *id.* at 851).

Dorado began working at SHM at the same time as codefendant Reyes, who was awarded a four-level mitigating role adjustment. Like Reyes, Dorado performed various functions at SHM, consisting primarily of consulting with immigrant clients and handling their immigration applications. Although Reyes did not work at SHM during 2009, she was employed at SHM for a longer continuous period than Dorado, who did not work at SHM for six months during 2007, and stopped working there altogether in June of 2009.

Moreover, as confirmed in the PSI, the leaders, organizers and supervisors of SHM were Dorado's parents – his mother, Caceres, and his stepfather, Alers. At the time he was recruited by his parents to work at SHM and engage in its illicit

immigration-application activities, in 2006, Dorado was only 21 years old.  During the ensuing conspiracy period, he suffered from anxiety and related substance abuse, for which he was treated by a psychologist and placed in a substance abuse treatment program.  PSI at ¶ 67; DE:233:14.  And his participation in the unlawful activities ended in 2009 – two years before his parents' involvement ended.  By then, Dorado was married and turned over a new leaf as a responsible adult engaged in lawful immigration-consulting and related work.  PSI at ¶¶ 79, 80.

For the period he worked at SHM, Dorado was supervised by his parents, who paid him a relatively small salary of $1,200.00 a week.  Notably, the payments collected from SHM's clients were given to Caceres and Alers – not Dorado.  All money and finances at SHM, as well as all day-to-day operations at the company, were handled by Caceres.  PSI at ¶ 13.  Dorado, unlike his parents, was not a recruiter or manager at SHM.  Evaluation of Dorado's relevant conduct within the jointly undertaken criminal activity, and a comparison of his involvement in relation to other participants within the same relevant conduct, reflects that his role – while analogous to that of Reyes, as to whom a mitigating role adjustment was recommended, DE:233:6 – was clearly less than that of Caceres and Alers.  That Dorado was nominally a director of SHM was not shown to have any import or effect, financially or otherwise, and appears to have been the result of planning by Caceres and Alers,

who remained the undisputed recruiters, instigators, and masterminds of SHM's operations.  Particularly in light of Dorado's conviction of conspiracy offenses that spanned a period approximately two years longer than his actual involvement with SHM's illicit activities, a downward adjustment is warranted.  *See United States v. Rodriguez de Varon*, 175 F.3d at 942 (recognizing propriety of mitigating role adjustment in conspiracy cases to further guidelines goal of "comparable sentences for similar acts," where defendant may be held accountable, by virtue of conspiracy offense, for conduct broader than his specific acts).

The district court, predicating its determination on an inaccurate view of the record and applicable legal standards, failed to adhere to an analysis of comparative culpability warranted under the sentencing guidelines.  Its denial of a minor role adjustment was thus improper, and should be vacated and remanded for reconsideration in light of the entirety of record facts and pertinent law.  *See Rodriguez de Varon*, 175 F.3d at 942-44 (providing that the denial of a minor role adjustment, which is appropriate where the defendant's culpability was less than most of the other participants in his relevant conduct, must be supported by the record).

## III.

## The defendant's sentence was unreasonable in light of the overrepresentation of the defendant's criminal history.

The court's denial of Dorado's request for a sentencing variance based on the overrepresentation of his criminal history resulted in the imposition of an unreasonable sentence. The 60-month term of incarceration imposed by the district judge failed to take into full account the background of familial and psychological difficulties and substance abuse that constituted the driving forces underlying Dorado's prior criminal involvement.

As a result of his overcoming psychological and related substance abuse problems that plagued him when barely out of his teens, including through counseling and other treatment, Dorado emerged – since leaving SHM in 2009, where his mother and stepfather, who enlisted him, directed his employment – into a mature, responsible individual. By the time of his sentencing, Dorado had shown himself to be a devoted husband and father who left his earlier criminal past for lawful employment and family life. *See, e.g.*, PSI at ¶ 62, DE:164:8 (Dorado awarded sole custody of his daughter, age five at the time of sentencing, when the child was two years old, given the substance abuse problem of her mother, codefendant Reyes, Dorado's former girlfriend); PSI at ¶ 63, DE:233:20-21 (Dorado married Ms. Urrego

in 2009; at the time of sentencing, she was raising the defendant's daughter, while gainfully employed as manager of a hair salon; further, since January of 2011, she was engaged in assisting Dorado in operating Onyx Global Acquisitions, LLC (OGA), owned by Dorado, and continued to manage its operations following Dorado's incarceration). Dorado's allocution at sentencing expressing utter remorse and contrition for his offenses, which he directed to everyone he may have harmed, to the Court, and to his wife and daughter, reflected the truly changed nature of his beliefs and behavior.

Notably, Dorado's prior convictions were committed when he was 19 or in his early 20's, and stemmed from driving violations (operating unsafe vehicle, driving under the influence, driving while license suspended, sound too loud from vehicle) nearly exclusively accompanied by alcohol and drug use (possession of cannabis and, on one occasion, a bottle of Xanax (alprazolam)). In addition, his prior convictions included two instances of carrying a concealed weapon found in his car, i.e., a folding knife (age 19) and a pistol and knives (age 22), after which Dorado was placed in a drug treatment program. PSI at ¶¶ 45, 48. As explained by defense counsel at sentencing, these instances involved a Taser instrument in his car trunk, a weapon he was transporting in his car en route to the flea market where he was working and at which he planned to sell the item, and another weapon he kept for protection, since

26

he carried cash with him back and forth from his work at the flea market. DE:233:14.

Further, the last misconduct attributed to Dorado, reckless driving in July of 2009,

occurred when he was 24 years old, as to which he pled no contest, with adjudication

withheld and five months' probation imposed. PSI at ¶ 24.

Although the instant offenses nominally ended in 2011, Dorado's involvement

in SHM ended in June of 2009, when he left SHM's employ. And, since his marriage

in September of 2009, Dorado's activities and employment had not been anything but

lawful. *See also* DE:233:12, 16 (defense counsel noting that, after Dorado left SHM

in 2009, long before the indictment or his arrest in 2011, the government

surreptitiously investigated Dorado in his new business and found everything to be

legitimate). In view, additionally, of the loss of his father when Dorado was only six

years old and "complicated" relationship with his mother, PSI at ¶ 59, Dorado's

maturity from the difficulties of his early life is notable. *See also* DE:170 (sentencing

letters submitted by family and friends extolling Dorado's good character, including

from his brother-in-law, Rafael Amanau, who writes that "especially in the last years,

I have known him to be a caring husband, a responsible father and a hard worker. On

a personal note, I can say that his passion toward his family is one of a kind. I have

never known him to fail in his responsibilities as a financial supporter for his family,

faithful husband and dedicated father.").

27

The relatively minimal nature of Dorado's prior offenses, which also occurred when Dorado was young and suffering from substance-abuse problems, militate in favor of a determination they overrepresent his criminal history and support a lesser sentence, particularly in light of his substantial cooperation with the government in the instant case.   Although the court recognized the significance of Dorado's cooperation, and accorded consideration to it, the court's initial upward departure to a sentence in excess of ten years failed to acknowledge the overrepresentation of Dorado's overall criminal history and his rehabilitative characteristics.  *See, e.g., United States v. Howe*, 543 F.3d 128 (3d Cir. 2008)(sentence of probation, with home confinement, for wire fraud offense, properly supported by district court finding of defendant's devotion to family, regard in community, and expression of significant remorse at sentencing); *United States v. Wachowiak*, 496 F.3d 744, 754 (7th Cir. 2007)(affirming reasonableness of downward sentencing variance in context of defendant's sincere expression of remorse and broad support of family, friends and colleagues that district court perceived was not adequately reflected in Category I criminal history under the guidelines).

In the present case, the district court's near-exclusive focus on the nature of Dorado's wrongdoing in the instant case to the exclusion of his subsequent jettisoning of illegality in favor of a productive life as a contributing member of society and a

responsible husband and father, and further failure to recognize the relatively minimal nature of his prior, drug and alcohol-fueled convictions, fails to comport with the requirement of considering the broad panoply of factors under 18 U.S.C. § 3553(a) in fashioning a reasonable sentence. *See* 18 U.S.C. § 3553(a)*; United States v. Booker*, 543 U.S. 220, 259, 261, 125 S.Ct. 738, 764, 766 (2005) (judges must take account of the guidelines together with other sentencing goals; "Section 3353(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.").

Viewed in light of all of these circumstances, reflecting the broader scope of sentencing criteria under 18 U.S.C. § 3553(a), the sentence imposed was unreasonable and failed to comport with the statutory imperative of a sentence which is "sufficient, but not greater than necessary," to comply with statutory goals, and thus should be reversed. 18 U.S.C. § 3553(a).

## IV.

**The appellate waiver provision in the defendant's plea agreement**

**was ineffective.**

The appeal waiver in this case is ineffective on the basis that the sentence was premised on an upward departure from the applicable sentencing guidelines range of

29

78-97 months, an express exception to the appeal waiver.  DE:124:6 (written plea agreement providing for a waiver of the right to appeal the sentence "*unless the sentence ... is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing*")(emphasis added); DE:229:10 (court explaining that an exception to the appeal waiver applies "[i]f I sentence you to a sentence that exceeds the statutory maximum *or if I vary or depart and sentence you above the sentencing guideline range*")(emphasis added).

At sentencing, the court stated its sentencing calculation began from a sentence "way in excess of ten years," DE:233:18, thereby constituting an upward departure from the 97-month high end of the applicable guidelines range.  Following that upward departure, the court then reduced the sentence based on a credit for Dorado's cooperation pursuant to the court's granting of the government's motion for a downward departure under U.S.S.G. § 5K1.1. DE:233:17, 18.  Accordingly, because the court's sentencing calculation was expressly premised on an amount in excess of the applicable guidelines range established at sentencing, the appeal waiver in this case was ineffective.

Further, and in the alternative, the record fails to ensure that the court adequately explained the nature and scope of the waiver of appellate rights and that Dorado understood the full significance of the appellate waiver, precluding its

enforceability. *See United States v. Bushert*, 997 F.2d 1343, 1350–51 (11th Cir. 1993).

## CONCLUSION

Based upon the foregoing argument and citations of authority, the Court should vacate the defendant's sentence and remand for resentencing.

Respectfully submitted,


  s/ Jacqueline E. Shapiro
JACQUELINE E. SHAPIRO, ESQ.
Law Offices of Jacqueline E. Shapiro
Counsel for Jesus M. Dorado
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel. (305) 403-8207
Fax: (305) 403-8209


## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the numbered pages of this brief contain 6,365 words.


  s/ Jacqueline E. Shapiro
Jacqueline E. Shaprio

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY service of the foregoing Brief for the Appellant via U.S.

Mail this   16th   day of April, 2013, upon Kathleen M. Salyer, Assistant United

States Attorney, 99 N.E. 1st Avenue, Miami, Florida 33132.


   s/ Jacqueline E. Shapiro            
Jacqueline E. Shapiro